**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**JOHNNY RHEW**                                                              **PLAINTIFF**

**V.**                                          **4:07CV00324 JMM**

**NORANDAL USA, INC.**                                                 **DEFENDANT**

**ORDER DENYING PLAINTIFF'S AND GRANTING DEFENDANT'S
MOTION FOR JUDGMENT ON THE RECORD**

Pending are cross-motions for Judgment on the Pleadings. For the reasons set forth

below, the Plaintiff's Motion is DENIED and the Defendant's Motion is GRANTED.

Facts

Plaintiff Johnny Rhew was employed with Norandal USA, Inc. at the Newport Rolling

Mill facility beginning in 1972. Plaintiff last worked on January 7, 2006. On January 11, 2006

an MRI was performed on Plaintiff's left knee which indicated medial and lateral meniscal tears.

(AR 212). Plaintiff was treated by Dr. Kyle Blickenstaff for his knee condition. Mr. Rhew

underwent arthroscopic surgery on his left knee in late January 2006. On February 2, 2006, Dr.

Blickenstaff noted that Mr. Rhew was recovering well from his knee surgery but would have to

remain off work until March 17, 2006 due to a back condition. (AR 212).

On February 8, 2006 Plaintiff consulted Dr. Scott M. Schlesinger, M.D. for his back

condition. Dr. Schlesinger diagnosed Plaintiff as suffering from symptomatic lumbar disc

disease. Dr. Schlesinger ordered epidural steroid injections. (AR 214). A lumbar spine MRI

was performed on April 12, 2006 which revealed mixed broad-based disc bulge at the L3-4 level

along with moderate facet arthropathy that caused mild right-sided and moderate left-sided

exiting neural foraminal stenosis with abutment of the descending left L3 nerve root. In addition,

the results showed disc desiccation and disc height loss at the L4-5 and L5-S1 levels with mild irregularity along the disc spaces; mixed broad-based bulges along with mild to moderate facet arthropathy at each of those levels.  This resulted in moderate bilateral exiting neural foraminal stenosis at the L4-5 level with effacement of the descending right L5 nerve root.  The findings at L5-S1 resulted in mild left-sided and moderate right-sided exiting neural foraminal stenosis with effacement at the exiting right L5 nerve root.  (AR 217).

Plaintiff was referred to Dr. Jasen Chi of Ortho Arkansas for further evaluation.  On April 18, 2006, Dr. Chi issued a letter in which he stated: "To say the least, Mr. Rhew has undergone excruciating pain in his lower spine, which significantly inhibits his ability to work as he normally functions on a daily level."  (AR 172).  Dr. Chi noted that Plaintiff was not a candidate for surgical intervention.  (AR 171).   Plaintiff was seen by Dr. Chi again on May 18, 2006.  At that time, Plaintiff reported significant pain in his lower spine.  He had difficulty with complete ambulation and walked with somewhat of a limp.  Dr. Chi referred Plaintiff to a pain specialist for pain management and noted that it was inevitable that he would experience a considerable amount of lower back pain.  However, Plaintiff was not a surgical candidate.  Dr. Chi stated "My impression is that he is not to lift items more than 5 pounds in duration [n]or is he to overexert his lower back.  I consider him to be in a state of disability given these factors."  (AR 175).

On June 8, 2006, Dr. Chi authored another letter in which he directed that Plaintiff "is not to lift items more than 5 pounds in duration, nor is he to overexert his lower back."  (AR 176-77)  Dr. Chi stated that he considered Plaintiff to be in a "state of disability" given these factors.  (Id.).  Dr. Chi further stated:

My opinion remains that Mr. Rhew is not able to perform activities of

> work that he was able to perform prior to his being seen by myself in clinic.
>
> . . .
>
> Mr. Rhew is not capable of resuming the work activities that he once performed while working at Norandal. I am not sure if there are other types of work opportunities at Norandal, including desk work, however, I can say for certain that given the nerve impingement in his lower spine and his bulging discs that lifting items and continued manual labor, has potential to worsen the damage to his lower back.

(Id.).

Plaintiff applied for Ancillary Disability on July 11, 2006. Dr. Chi submitted an additional letter in support of Plaintiff's application on July 17, 2006 stating that he believed that Mr. Rhew was in a "state of permanent disability." (AR 222-23). Dr. Chi also stated: "I made the recommendation for him not to lift items and to change his line of work to the extent where he would not be lifting items." (AR 222).

Norandal had a medical records review conducted by Medical Review Institute of America, Inc. ("MRIoA"). MRIoA was provided with copies of the medical records of Dr. Kyle Blickenstaff, Dr. Scott Schlesinger, Dr. Jasen Chi; procedure reports; MRI lumbar spine of 4/12/06; job description, and patient pension plan. The medical reviewer agreed with Dr. Chi that Plaintiff was suffering from lumbar disc disease and noted that Dr. Chi had imposed a five-pound lifting restriction. The reviewer concluded that Dr. Chi had essentially recommended that Plaintiff perform sedentary activities only. Accordingly, the reviewer determined that Plaintiff had the capacity to perform sedentary work and was not precluded from engaging in any occupation as required to be eligible for benefits under the Plan. (AR 198-200). On October 6, 2006, Norandal advised Plaintiff that his application for ancillary disability benefits was denied.

(AR 194).  On October 16, 2006, Norandal notified Plaintiff that his sickness and accident benefits expired on October 15, 2006 and because his ancillary benefits under the pension plan had been denied, unless he was able to return to work, his employment would end on the last day of his sickness and accident benefits.  He was therefore terminated effective October 16, 2006. (AR 256).

On October 25, 2006 Plaintiff appealed the denial of benefits decision. Plaintiff submitted an additional letter and office note from Dr. Chi dated November 20, 2006. With respect to Plaintiff's occupational limitations, Dr. Chi stated: "Mr Rhew is not a candidate for continued work at Norendel [sic] which involves any form of lifting.  I do not know whether there is any work at Norendel [sic] that requires him to sit at a desk and work as a desk job individual. . . .  Given this he would not be an appropriate candidate to perform acts of manual labor that would cause undue stress on his lower back."  (AR 179-80).  In the treatment notes Dr. Chi states that he would prefer a neurosurgeon evaluate Mr. Rhew and make a recommendation regarding whether Mr. Rhew could potentially perform the duties of a desk job. (AR 181).  No evidence exists in the administrative record to indicate that Mr. Rhew was referred to a neurosurgeon.

Norandal had another medical record review conducted by MRIoA on January 17, 2007. This medical reviewer concluded that the notes did not contain information to substantiate that Plaintiff was incapable of performing _any_ type of gainful employment.  (AR 190). On March 13, 2007, Norandal advised Mr. Rhew that it was denying his appeal. (AR 234-35).

<u>Standard of Review</u>

ERISA provides for judicial review of disability benefit denial decisions.  The Supreme

Court has recognized that a deferential standard of review is appropriate under 29 U.S.C. §

1132(a)(1)(B), if "the benefit plan gives the administrator or fiduciary discretionary authority to

determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber*

*Co. v. Bruch*, 489 U.S. 101, 115 (1989).  It is undisputed that the Plan gives this discretion to

Norandal.   Accordingly, the decision of Norandal is subject to review for abuse of discretion by

this Court.  *King v. Hartford Life and Acc. Ins. Co.*, 414 F.3d 994 (8th Cir. 2005).

In applying an abuse of discretion standard, the reviewing Court must affirm if a

"reasonable person *could* have reached a similar decision, given the evidence before him, not that

a reasonable person *would* have reached that decision." *Ferrari v. Teachers Ins. and Annuity*

*Ass'n*, 278 F.3d 801, 807 (8th Cir. 2002).  A reasonable decision is one based on substantial

evidence that was actually before the plan administrator.  Substantial evidence is defined as

"more than a scintilla but less than a preponderance."  *Schatz v. Mutual of Omaha Ins. Co.*, 220

F.3d 944, 949 (8th Cir. 2000).  A reviewing court may consider both the quantity and the quality

of evidence before a plan administrator. "The evidence a plan administrator may require to prove

disability benefit claims depends on the terms of the plan and the circumstances of the case."

*Johnson v. Metropolitan Life Ins. Co.,* 437 F.3d 809 (8th Cir. 2006)(quoting *Pralutsky v.*

*Metropolitan Life Insurance Company,* 435 F.3d 833, 838-39 (8th Cir. 2006).  Generally, "[i]t is

not unreasonable for a plan administrator to deny benefits based upon a lack of objective

evidence." *McGee v. Reliance Standard Life Ins. Co.,* 360 F.3d 921, 925 (8th Cir. 2004).

<u>Discussion</u>

The Court finds that the record supports the denial of benefits in this case.  The Pension

Plan contains an Ancillary Disability provision.  The eligibility for this Ancillary disability

5

benefit is described as follows:

> If you should become permanently and totally disabled before age
> 65 in the opinion of a qualified physician designated by the
> company and have 10 years or more of credited service, you may
> be eligible for an immediate ancillary disability benefit under the
> Norandal Pension Plan, payable until you reach age 65.  A
> permanent and total disability is defined as a physical or mental
> condition caused by a bodily injury or disease, whether the
> condition is work-related or not, that prevents you from engaging
> in any gainful employment for profit.

Plaintiff argues that the denial of disability benefits was arbitrary and capricious, pointing

specifically to the medical records of Dr. Chi wherein he stated:  that he considered Plaintiff to

be in a "state of disability;" " he is not to lift items more than 5 pounds in duration, nor is he to

over exert his lower back," and  "I consider him to be in a state of permanent disability."

Plaintiff argues that the medical reviewer's opinion that Plaintiff was capable of sedentary work

ignores the definition of sedentary work as given by the Social Security Administration and the

Department of Labor, and failed to take into consideration that Mr. Rhew was approved for

social security disability.  Plaintiff argues that if Mr. Rhew was prohibited from lifting more than

five pounds, he was not capable of performing even sedentary work.

Even if the Court were to find that Dr. Chi gave a definitive opinion that Plaintiff was

completely disabled, an ERISA administrator does not act arbitrarily by accepting the disability

findings of an independent medical reviewer over a treating physician when there is a conflict of

opinion, unless the record does not support the denial.  *Johnson v. Metropolitan Life Ins. Co.*,

437 F. 3rd 809 (8th Cir. 2006).  Here, the record supports the denial of benefits.  Although Dr. Chi

opined that Plaintiff was "in a state of disability" he only prohibited Plaintiff from lifting more

than five pounds and from over exerting his lower back.  The medical reviewers determined that

6

Plaintiff's physical limitations would not preclude him from working in a sedentary occupation. Even Dr. Chi questions whether desk jobs were available for Plaintiff. No restrictions were placed on Plaintiff's upper extremities. The record supports a finding that Plaintiff was physically capable of performing a sedentary position with the restrictions recommended by Dr. Chi.

Plaintiff criticizes Norandal for failing to conduct an independent evaluation, however, a plan administrator is not required to request an independent medical examination and may rely upon their regular consultants in considering a claim for disability benefits. *Rutledge v. Liberty Life Assur. Co.*, 481 F.3d 655 (8th Cir. 2007). Additionally, an "ERISA plan administrator or fiduciary generally is not bound by a SSA determination that a plan participant is 'disabled,' " even when the plan's definition of disabled is similar to the definition the SSA applied. *See Jackson v. Metro. Life Ins. Co.*, 303 F.3d 884, 889 (8th Cir.2002); *Farfalla v. Mutual of Omaha Ins. Co.,* 324 F.3d 971, 975 (8th Cir. 2003) and *Conley v. Pitney Bowes*, 176 F.3d 1044, 1049-50 (8th Cir.1999) (holding that elaborate schemes mandated in social security context to evaluate claimant's subjective complaints of pain and fitness for particular jobs need not be "import[ed] wholesale, into what is essentially a private-law area"), *cert. denied*, 528 U.S. 1136, 120 S.Ct. 979, 145 L.Ed.2d 930 (2000). Further, courts have held that individuals failed to establish eligibility for long-term disability benefits despite five-pound restrictions. *See Stallings v. Unum Provident Corp.*, 2006 WL 328135 (W.D. La., 2006) and *Honda v. Sunshine Biscuit Long Term Disability Plan*, 125 F. 3d 858 (9th Cir. 1997).

It is well settled that "when a conflict in medical opinions exists, the plan administrator does not abuse his discretion by adopting one opinion, if reasonable, and finding that the

employee is not disabled." *Smith v. Unum Life Ins. Co.*, 305 F.3d 789, 794 (8th Cir. 2002).

Although it is apparent that Plaintiff suffers from a condition which causes him significant pain

and limits his employment options, the evidence supports the Defendant's conclusion that

Plaintiff did not meet the definition of disabled from any occupation as required by the Plan.

      For these reasons, the Plaintiff's Motion (docket # 16) is DENIED and the Defendant's

Motion (Docket # 19) is GRANTED.  The Clerk is directed to close the case.

      IT IS SO ORDERED this 8th day of April, 2008.

                              James M. Moody
                               United States District Judge